21-1008
*Loch View LLC v. Seneca Ins. Co. Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of April, two thousand twenty-two.

PRESENT:
　　　　　RICHARD J. SULLIVAN,
　　　　　STEVEN J. MENASHI,
　　　　　BETH ROBINSON,
　　　　　　　*Circuit Judges*.

_____

LOCH VIEW LLC,

　　　　　　*Plaintiff-Appellant*,

　　　v.　　　　　　　　　　　　　　　　　　No. 21-1008

SENECA INS. CO. INC.,

　　　　　　*Defendant-Appellee.*[*]

_____

_____

[*] The Clerk of Court is respectfully directed to amend the case caption as set forth above.

FOR PLAINTIFF-APPELLANT:    GREGORY JONES (Patrick Tomasiewicz, *on the brief*), Fazzano & Tomasiewicz, LLC, Hartford, CT.

FOR DEFENDANT-APPELLEE:    CRISTIN E. SHEEHAN, Morrison Mahoney LLP, Hartford, CT.

Appeal from an order of the United States District Court for the District of Connecticut (Victor A. Bolden, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court entered on March 26, 2021, is **AFFIRMED**.

Plaintiff-Appellant Loch View LLC ("Loch View") appeals from the district court's order confirming an arbitration award in Loch View's dispute with its insurer, Seneca Insurance Company, Inc. ("Seneca"). Loch View owns several buildings in Willimantic, Connecticut, and insured them under a policy issued by Seneca. After the buildings sustained damage from Superstorm Sandy in October 2012, Loch View sought coverage pursuant to the policy. When Seneca refused to pay the amount Loch View thought it was owed under the policy, Loch View brought suit, alleging breach of contract and a number of other claims under

2

Connecticut state law. The district court granted Seneca's motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), *see* 9 U.S.C. §§ 1–16, 201–08, 301–07, and the parties' agreement to arbitrate in the event of a disputed claim.

The parties each selected an arbitrator, who in turn jointly appointed an umpire, Remo Capolino, to settle matters on which the two arbitrators could not agree. The arbitrators could not agree on the sum to be awarded as justifiable recompense for Loch View's repairs, so they submitted written assessments to Capolino, who awarded Loch View $284,438.43. Loch View moved the district court to vacate the arbitration award, arguing that (1) the award was untimely because Capolino rendered it more than thirty days after receiving the arbitrators' submissions, (2) Capolino was biased in favor of Seneca because he had previously conducted business with Seneca's appointed arbitrator, Erik Jaeger, and (3) Capolino made a number of errors in evaluating the evidence and arriving at his award. The district court denied the motion to vacate and confirmed the award. This timely appeal followed. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

"In reviewing a district court's confirmation of an arbitral award, we review

legal issues *de novo* and findings of fact for clear error." *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 260 (2d Cir. 2003). As relevant here, an arbitration award may be vacated "where there was evident partiality or corruption in the arbitrators," 9 U.S.C. § 10(a)(2), or "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made," *id.* § 10(a)(4). The scope of our review is narrow: "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Landau v. Eisenberg*, 922 F.3d 495, 498 (2d Cir. 2019) (quoting *Landy Michaels Realty Corp. v. Local 32B-32J Serv. Emps. Int'l*, 954 F.2d 794, 797 (2d Cir. 1992)). "An arbitration award may be vacated if it exhibits a manifest disregard of the law." *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1215 (2d Cir. 2002) (internal quotation marks omitted).

Before reaching the merits of the dispute, however, we first turn to a procedural issue: the propriety of Loch View's attempt to file in the district court what it styled an "amended" motion to vacate the arbitration award. Loch View filed its first motion to vacate on July 2, 2020. Seneca promptly filed a memorandum in opposition to that motion on July 23, and Loch View

4

subsequently filed the contested "amended" motion to vacate the arbitration award on October 26 – without moving for leave to amend or otherwise seeking permission for that filing. Seneca objected to both the propriety and the substance of the amended motion, after which Loch View filed a reply supporting its amended motion. The district court declined to consider Loch View's amended motion and reply. Loch View now argues that that was error, likening its amended motion to a pleading and citing the generous repleading standard of Rule 15(a), which provides that "court[s] should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2).

We find that the district court committed no error in declining to consider Loch View's filings. First, we doubt that Loch View can avail itself of the generous Rule 15(a) standards for amending pleadings with respect to its motion to vacate the arbitration award, which it concedes is *not* a pleading. *See* 9 U.S.C. § 6 ("Any application to the court [under the FAA] shall be made and heard in the manner provided by law for the making and hearing of *motions*, except as otherwise herein expressly provided.") (emphasis added). But even if we were to engage in the typical Rule 15(a) abuse-of-discretion review of the district court's refusal to consider the amended motion, *see McCarthy v. Dun & Bradstreet Corp.*,

5

482 F.3d 184, 200 (2d Cir. 2007), we would find no abuse of discretion here for the straightforward reason that Loch View never *requested* amendment – it simply filed its amended motion on the docket. Obviously, a district court cannot be said to err by "not permitting an amendment that was never requested." *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 250 (2d Cir. 2004). Thus, we limit ourselves to the grounds for vacatur that Loch View urged in its initial motion to vacate the award.

Loch View's objection to the timeliness of the award is rooted in Connecticut state law, which provides that, when the parties have not contracted on a timetable for the arbitration, an award made more than "thirty days" following either "the hearing" or, if the parties are to submit additional material after the hearing, "the date fixed . . . for the receipt of the material," "shall have no legal effect." Conn. Gen. Stat. § 52-416(a). All agree that the award in this case was issued more than thirty days after the final submission to the arbitrator. According to Loch View, the district court erred when it did not vacate the arbitration award as untimely under the "manifest disregard of the law" standard.

We disagree. Assuming without deciding that Loch View is right that the "manifest disregard" framework applies to its challenge to the arbitration award based on the Connecticut timeliness provision, Loch View has failed to

6

demonstrate a manifest disregard in this case.[1] "To succeed in challenging an award under the manifest disregard standard, a party must make a showing that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Seneca Nation of Indians v. New York*, 988 F.3d 618, 626 (2d Cir. 2021) (internal quotation marks omitted). In other words, "to intentionally disregard the law, the arbitrator must have known of its existence, and its applicability to the problem before him." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (quoting *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 93 (2d Cir. 2008)).

Even if Connecticut's timeliness provision applies to the arbitration in this case, Loch View has failed to show that the umpire intentionally disregarded the

---

[1] We also doubt that the Connecticut timeliness requirement upon which Loch View relies applies to this arbitration in the first place. To be sure, parties to an arbitration agreement *can* agree to be bound by the arbitration procedures of a particular state, *see, e.g.*, *Sec. Ins. Co. of Hartford v. TIG Ins. Co.*, 360 F.3d 322, 325–26 (2d Cir. 2004), but they did not do so here. No provision of the contract between Loch View and Seneca indicates that disputes will be arbitrated pursuant to the law of the State of Connecticut, and the Supreme Court has made clear that individual states cannot impose extracontractual conditions on parties to an arbitration agreement that "conflict with the FAA or frustrate its purpose to ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 347 n.6 (2011); *see also West Rock Lodge No. 2120 v. Geometric Tool Co.*, 406 F.2d 284, 286–87 (2d Cir. 1968) (declining to incorporate Conn. Gen. Stat. § 52-416(a) into the federal statutory scheme on labor relations). Still, because Loch View cannot prevail even if Connecticut's provision on arbitration timeliness applies, we need not resolve this issue.

law in his award.   No provision of the contract between Loch View and Seneca indicates that disputes will be arbitrated pursuant to the law of the State of Connecticut, and nothing more than speculation indicates that the umpire knew he was obliged to issue an award within thirty days of the final submissions.   We therefore will not disturb the arbitration award on this ground.

Loch View next argues that the district court should have vacated the arbitration award because of Capolino and Jaeger's prior business relationship, or else that it should have at least held an evidentiary hearing on that issue before confirming the award.   We will find "evident partiality within the meaning of 9 U.S.C. § 10 . . . where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."   *Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) (quoting *Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Benefits Funds*, 748 F.2d 79, 84 (2d Cir. 1984)).   Here, all Loch View alleged in its motion to vacate was that it had "learned that [Jaeger's] firm and [Capolino's] firm have conducted business together [prior to this arbitration], which information was not disclosed as part of the appraisal process," and that Jaeger and Capolino had "engaged in ex parte communications."   App'x at 30.   In response to Loch View's motion to vacate,

8

Jaeger submitted an affidavit attesting that Loch View's arbitrator, Andrew Luciano, was made aware of Capolino and Jaeger's prior dealings and, following inquiry into them, consented to using Capolino as the umpire. That affidavit also attested that Jaeger's ex parte contacts with Capolino were about procedural and administrative issues, such as how Capolino should format his written appraisal. But putting aside Seneca's factual defenses, Loch View's assertions do not even connect Jaeger and Capolino *individually*. Instead, Loch View alleged merely that their firms had had prior interactions. Such a threadbare allegation – that would not show "evident partiality" even if true – does not require the district court to hold a hearing on the allegation, let alone vacate the award.

Finally, Loch View contests the arbitration award on the ground that the umpire performed inadequately by, for instance, not noting whether his final award included amounts for damage to the entirety of the building, rather than just the roof, and not determining whether repairing (rather than replacing) the roof was even feasible in light of the extensive damage. The award in this case, however, easily clears the applicable bar of bearing "a barely colorable justification for the outcome reached." *Landau*, 922 F.3d at 498 (quoting *Landy Michaels Realty Corp.*, 954 F.2d at 797). Capolino explained, for instance, that he had considered

9

and tested whether shingles on the roof could be removed such that repair – rather than replacement – of the roof was possible. And Loch View's contention that Capolino should have awarded costs for facets of the building other than the roof – or else have delineated more clearly which portion of his award was meant for those parts of Loch View's property – was not raised in its original motion or passed on by the district court, so we likewise decline to consider it.

We have considered all of Loch View's remaining arguments and have found them to be without merit. For the foregoing reasons, we **AFFIRM** the order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court